**B1040 (FORM 1040) (12/24)**

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>Lisa L. Lambert, United States Trustee | **DEFENDANTS**<br>David Godat |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Elizabeth A. Young<br>Office of the United States Trustee<br>1100 Commerce Street, Room 976<br>Dallas, Texas 75242<br>214-767-1247 | **ATTORNEYS** (If Known)<br>Howard Marc Spector<br>Spector & Cox, PLLC<br>12770 Coit Road, Banner Place, Suite 850<br>Dallas, Texas 75251 |
| **PARTY** (Check One Box Only)<br>☐ Debtor ☑ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☑ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint Objecting to Debtor's Discharge under 11 U.S.C. 727(a)(3), 727(a)(4)(A) and 727(a)(2)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☑ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| | |
|---|---|
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

**B1040 (FORM 1040) (12/24)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>David Godat | | BANKRUPTCY CASE NO.<br>25-30097 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Texas | | DIVISION OFFICE<br>Dallas | NAME OF JUDGE<br>Jernigan |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE<br>3/19/26 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Elizabeth Ziegler Young | |



**INSTRUCTIONS**

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **DAVID GODAT,** | § | **CASE NO. 25-30097-SGJ-7** |
| | § | |
| **DEBTOR.** | § | |
| | § | |

| | | |
|---|---|---|
| | § | |
| **LISA L. LAMBERT,** | § | |
| **UNITED STATES TRUSTEE,** | § | |
| | § | |
| **PLAINTIFF,** | § | **ADVERSARY NO. ________** |
| | § | |
| **v.** | § | |
| | § | |
| **DAVID GODAT,** | § | **HON. STACEY G. JERNIGAN** |
| | § | |

**United States Trustee's Complaint Objecting to Discharge**

Lisa L. Lambert, the United States Trustee for Region 6 (the "United States Trustee"), objects to the discharge of David Godat ("Dr. Godat" or the "Debtor") under 11 U.S.C. §§§ 727(a)(4)(A), 727(a)(3) and 727(a)(2). The United States Trustee would show:

**Summary**

Dr. Godat filed chapter 7 bankruptcy to discharge $3,620,193.00 in general unsecured debt. His sworn schedules and statements, which imply that Dr. Godat is a married self-employed doctor living in Dallas making only $15,000.00 each month, do not disclose his status as a high-earning plastic surgeon maintaining a lavish lifestyle that includes two separate Florida residences and luxury items for friends. Dr. Godat claims he does not maintain financial records because he operates on a cash-only basis. The United States Trustee objects to Dr. Godot's

discharge under 11 U.S.C. § 727(a) for false oath; failure to maintain books and records; and concealment of assets.

## **Filing Fee**

1. The United States Trustee is not required to submit a fee because "no fees under the [Bankruptcy Court Miscellaneous Fee] schedule shall be charged to federal agencies." *Bankruptcy Court Miscellaneous Fee Schedule, Appendix to* 28 U.S.C. § 1930.

## **Jurisdiction and Venue**

2. The Court has subject matter jurisdiction over discharge complaints and motions to dismiss. 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the *Standing Order of Reference* (defining subject matter jurisdiction), 28 U.S.C. § 157(b)(2)(J)(defining core matters).

3. The United States Trustee has standing to file the complaint. 11 U.S.C. § 727(c)(1).

## **Parties**

4. Plaintiff is the United States Trustee for Region 6.

5. Defendant is Dr. Godat, the Debtor in this case.

## **Allegations Common to All Counts**

### **Bankruptcy Filing**

6. On January 7, 2025 (the "Petition Date"), Dr. Godat filed his voluntary Chapter 7 petition [docket no. 1]

7. Scott Seidel is the chapter 7 trustee ("Trustee").

8. Dr. Godat is represented in this case by Howard Spector.

9. On February 6, 2025, Dr. Godat filed Schedules (“Schedules” or “Original Schedules”) and Statement of Financial Affairs (“SOFA”). [docket nos. 21, 23]

10. Dr. Godat signed both the Schedules and SOFA under penalty of perjury.

11. On March 7, 2025, Dr. Godat filed amended Schedules A/B and D (respectively, “Amended Schedule A/B” and “Amended Schedule D”). [docket nos. 31 and 32].

12. Dr. Godat signed Amended Schedules A/B and D under penalty of perjury.

13. The extended deadline to object to discharge is March 27, 2026. [docket no. 77]

**<u>Debtor’s Income and Expenses</u>**

14. Dr. Godat contended on Schedule I that he is currently self-employed as a physician and grosses $15,000.00 monthly. [docket no. 21, Schedule I]

15. Dr. Godat does not have any dependents. [docket no. 21, Schedule J]

16. Dr. Godat contended on Schedules I and J that his monthly income exceeds monthly expenses by $186.00. [docket no. 21, Schedule J].

17. Dr. Godat’s monthly expenses include, but are not limited to the following:

   a. $5,950.00 in rent;
   b. $1,000.00 in food;
   c. $1,000.00 in clothing;
   d. $200.00 in personal care;
   e. $1,500.00 in medical and dental expenses;
   f. $1,000.00 in entertainment expenses;
   g. $1,090.00 in car payments; and
   h. $2,000.00 in alimony payments. [docket no. 21, Schedule J].

18. To date, Dr. Godat has not amended his Schedules I or J.

**Residence**

19. Dr. Godat stated on the petition that he lives at 3601 Harvard Avenue, Dallas, TX 75205 ("3601 Harvard"). [docket no. 1]

20. Dr. Godat listed 3601 Harvard as a leasehold with zero value on Schedule A/B but did not list any corresponding leases on Schedule G. [docket no. 21, Schedules A/B and G]

21. Dr. Godat also listed 3601 Harvard as his employer's address on Schedule I. [docket no. 21, Schedule I]

**Assets**

22. Dr. Godat owns the following pieces of real property: 12750 N. Central Expwy, Dallas, Texas, valued at $50,000.00; and 12550 N. Central Expwy, Dallas, Texas, valued at $450,000.00. [docket no. 21, Schedule A/B]

23. Dr. Godat originally scheduled two vehicles on Original Schedule A/B: a 2021 Bentley Continental valued at $170,000.00; and a 2023 Ford Bronco valued at $40,000.00. [docket no. 21, Original Schedule A/B]

24. The 2021 Bentley Continental is driven by his estranged wife Isabella Garofanelli ("Ms. Garofanelli").

25. Dr. Godat scheduled a total of $34,301.00 in personal property. [docket no. 21, Schedule A/B]. Those assets include:

a. Furniture valued at $22,000.00;

b. Electronics valued at $700.00;

c. Stone and wood carvings valued at $3,500.00;

d. Two shotguns, two rifles, and four handguns valued at $3,500.00;

e. Wearing apparel valued at $2,000.00;

f. Two dogs valued at $100.00;

g. Cash of $1,500.00;

h. Interests in the following businesses:

   i. GG Plastic Surgery Institute, P.A. valued at $0;

   ii. Godat Investments, LLC valued at $0;

   iii. DCG Property Holdings, LLC valued at $0;

   iv. Icon ASC LLC valued at $0;

   v. Cafecito Coffee Company, LLC valued at $0; and

   vi. GG Medspa, LLC valued at $0;

i. Medical license valued at $1.00;

j. Claims against wife (Isabella Garofanelli) with an unknown value; and

k. Surgical instruments valued at $1,000.00.

26. Dr. Godat did not list any leases on Schedule G. [docket no. 21]

**<u>Original Schedules D, E/F</u>**

27. Dr. Godat's Original Schedule D states his secured debt totals $2,517,074.66, and consists of $2,300,000.00 owed to the IRS, $40,366.40 owed for the 2023 Ford Bronco, and $176,708.17 owed for the 2021 Bentley Continental. [docket no. 21, Schedule D].

28. Dr. Godat's priority debt on Schedule E/F totals $650,000.00 in amounts owed solely to Christine Duncan for domestic support obligations. [docket no. 21, Schedule E/F]

29. Dr. Godat's general unsecured debt on Schedule E/F totals $3,620,193.00. [docket no. 21, Schedule E/F]

**<u>Amended Schedules A/B and D</u>**

30. On March 7, 2025, Dr. Godat filed Amended Schedule A/B to include a 2022 Aston Martin DBX valued at $138,300.00. [docket no. 31]

31. On March 7, 2025, Dr. Godat filed Amended Schedule D to include $143,296.55 owed to Bank of America for the 2022 Aston Martin DBX. [docket no. 32]

**Dr. Godat's Income**

32. Dr. Godat did not file pay advices with the court in accordance with 11 U.S.C. § 521; instead, his counsel filed a statement indicating "he is self-employed and is unable to provide copies of pay stubs from 60 days prior to the petition date."

33. Dr. Godat contended on SOFA 4 that he grossed nothing in 2025 prior to the Petition Date; $93,364.36 in 2024; and $732,914.39 in 2023. [docket no. 23]

34. Dr. Godat checked "no" in response to SOFA 5, which asks debtors whether they received "any other income during this year or the two previous calendar years." [docket no. 23]

**Dr. Godat's Bank Account Statements**

35. Dr. Godat contended on both Original and Amended Schedule A/B that he had no bank accounts as of the Petition Date. [docket nos. 21, 31]

36. Dr. Godat did not disclose any closed bank accounts in response to SOFA Question 20. [docket no. 23]

37. In response to the United States Trustee's April 10, 2025, inquiry letter, Dr. Godat produced the following bank account statements:

a. PNC Bank Account xxx-886 for David M Godat MD PA from January 2022-August 2022;

b. PNC Bank Account xxx-287 for David Godat for the following months: July 2022 to August 2022; August 2022 to September 2022; August 2023 to September

2023; December 2023 to January 2024; February 2024 through February 2025; (collectively, the "PNC Accounts"); and

c. Truist Bank Account xxx-596 statements for Anastasiia Nikolayevna Danilina ("Ms. Danilina") and David M Godat for March 2025 through July 2025 ("Truist Account").

38. The Truist Account March 2025 statement reflects aggregate total purchases of $30,628.50, including the following purchases:

a. $2,500 to Bethel Zinyemba via Zelle on February 24, 2025;

b. $1,200 to Miami DJ Academy on March 7, 2025;

c. $3,263.50 at Louis Vuitton on March 7, 2025;

d. $6,000 wire transfer on March 7, 2025;

e. $3,000 Apple Cash payment on March 10, 2025;

f. $408.22 at Papi Steak on March 10, 2025; and

g. $1,089.23 for a telephone payment to Bank of America on March 12, 2025.

39. The Truist Account March 2025 statement reflects total deposits in the aggregate of $34,832.13, including but not limited to:

a. Payroll Quickpay Payroll David Godat of $20,813.58 on March 6, 2025; and

b. Debit card return of $3,263.50 at Louis Vuitton on March 10, 2025.

40. The Truist Account April 2025 statement reflects aggregate total purchases of $42,196.45, including the following purchases:

a. $5,950 wire transfer on March 20, 2025;

b. $3,500 to Seduction Cosmetic on March 21, 2025;

c. $6,000 wire transfer on April 3, 2025;

d. $1,500 to Dave Jaco on April 3, 2025;

e. $2,200 to Bethel Zinyemba on April 4, 2025; and

f. $2,461.66 at the St. Regis Hotel, New York on April 9, 2025.

41. The Truist Account April 2025 statement reflects total deposits in the aggregate of $51,914.03, including but not limited to:

a. Payroll Quickpay Payroll David Godat of $18,391.48 on March 20, 2025; and

b. Payroll Quickpay Payroll David Godat of $32,664.75 on April 3, 2025.

42. The Truist Account May 2025 statement reflects total purchases in the aggregate of $23,790.60, including but not limited to:

a. $1,500 to Pablo Patino on April 18, 2025;

b. $1,444 to Neiman Marcus on April 21, 2025;

c. $1,905.11 at Overland Aspen on April 21, 2025;

d. $1,415.45 at Kemo Sabe Aspen on April 23, 2025; and

e. $1,765.50 at Balmain on May 5, 2025.

43. The Truist Account May 2025 statement reflects total deposits in the aggregate of $20,392.23, including but not limited to:

a. $12,163.23 deposit on April 17, 2025;

b. A $5,700 wire transfer on May 2, 2025;

c. Return from Neiman Marcus of $1,444.50 on May 6, 2026.

44. The Truist Account June 2025 statement reflects total deposits of $1,735.04.

45. The Truist Account July 2025 statement reflects total deposits of $2,613.78.

**The Extensive Series of Section 341 Meetings**

**First 341 Meeting**

46. Dr. Godat failed to appear at his initial February 11, 2025, 341 Meeting (the "First 341") due to illness.

47. The First 341 was continued to February 20, 2025 (the "Second 341") to allow Dr. Godat time to recover from his illness.

**Second 341 Meeting**

48. Dr. Godat failed to appear at the Second 341.

49. The Second 341 was continued to March 7, 2025 (the "Third 341"), to allow Dr. Godat to appear.

**Third 341 Meeting**

50. Dr. Godat appeared and testified under oath at the Third 341.

51. Dr. Godat testified that he inadvertently failed to list his 2022 Aston Martin on his Schedules.

52. Dr. Godat also testified he missed the First and Second 341s because he was in the operating room.

53. Dr. Godat further testified that he is a subcontractor for plastic surgery in Miami, Florida and his surgery schedule is unpredictable.

54. Dr. Godat affirmed his Original Schedules, Amended Schedules and SOFA were true, accurate and complete.

55. Dr. Godat affirmed he understood he was testifying under oath under penalty of perjury.

56. Dr. Godat testified at the Third 341 while he listed 3601 Harvard as his official address, he has lived in Florida since June 2024.

57. Dr. Godat stated that his brother Peter Godat owns 3601 Harvard and that Dr Godat pays "some money" his brother to rent a room there.

58. Dr. Godat could not recall the exact rental amount, but it varies from $6,000 to $7,000. He did not specify how long this amount covers.

59. Dr. Godat testified that he leases two Florida apartments: one in Miami for approximately $1,500.00 a month and another in Coral Gables for approximately $6,000.00 a month.

60. Dr. Godat disclosed on Schedule J that his monthly rental payments are $5,950.00. [docket no. 21, Schedule J]

61. Due to connectivity issues, the Third 341 ended before the conclusion of the Chapter 7 Trustee's questioning.

62. The Third 341 was continued to March 31, 2025 (the "Fourth 341"), to allow Dr. Godat to produce documents and to address connectivity issues.

**Fourth 341 Meeting**

63. Dr. Godat failed to appear at the Fourth 341.

64. The Fourth 341 was continued to May 22, 2025 (the "Fifth 341"), to allow Dr. Godat to appear.

**Fifth 341 Meeting**

65. Dr. Godat failed to appear at the Fifth 341.

66. The Fifth 341 was continued to June 16, 2025 (the "Sixth 341").

**Sixth 341 Meeting**

67. Dr. Godat failed to appear at the Sixth 341.

68. The Sixth Meeting was continued to July 17, 2025 (the "Seventh 341").

**Seventh 341 Meeting**

69. Dr. Godat failed to appear at the Seventh 341.

70. According to his attorney, the failure to appear was due to emergency surgery.

71. The Seventh 341 was continued to September 4, 2025 (the "Eighth 341").

**Motion to Compel Appearance at the Eighth 341 Meeting**

72. On July 21, 2025, the United States Trustee filed her *Motion to Compel Attendance of David Godat at § 341 Meeting of Creditors*, which sought an order compelling Dr. Godat to appear at the Eighth 341. [docket no. 57] (the "Motion to Compel").

73. On August 21, 2025, the Court held a hearing on the Motion to Compel.

74. On August 26, 2025, the Court entered the *Order Compelling David Godat to Appear at § 341 Meeting of Creditors* (the "341 Meeting Order"). [docket no. 64]

**Eighth 341 Meeting**

75. On September 4, 2025, Dr. Godat appeared and testified under oath at the Eighth 341.

76. Dr. Godat testified that he listed all his assets and his debts on his Original and Amended Schedules and SOFA.

77. Dr. Godat testified his Schedules and SOFA were true and correct and that he understood he signed these documents under penalty of perjury.

***Employment***

78. Dr. Godat testified that none of the businesses listed on Amended Schedule A/B are currently operating.

79. Dr. Godat testified he is working as a contractor at Miami Life Cosmetic Surgery ("Miami Life"), a plastic surgery practice located in Miami, Florida.

80. Dr. Godat appears on the Miami Life Cosmetic Surgery Website as of March 18, 2026[1] as follows:




81. Dr. Godat testified that Miami Life pays him by check.

82. Dr. Godat stated that he cashes his paychecks at a check cashing store.

83. Dr. Godat has been maintaining this check cashing procedure for the majority of 2025, but used the Truist Bank Account for a time.

84. Dr. Godat does not keep any records of the cash that he receives or pays out.

85. Dr. Godat does not have any pay stubs that reflect how much money he earns every month.

86. Dr. Godat does not pay taxes on any income earned from his contract plastic surgery work.

87. Dr. Godat has not made any estimated tax payments since 2022.

[1] https://miamilifecosmetic.com/surgeon/dr-david-godat-m-d/

88. Dr. Godat testified that he pays expenses in cash, through a prepaid Visa card, or gives cash to a friend for that individual to pay payments on his behalf.

***Dr. Godat's wife***

89. Dr. Godat and his estranged wife, Ms. Garofanelli, married in September 2022 and executed a post-nuptial agreement in September 2023.

90. Ms. Garofanelli is a social media influencer and travel blogger who hosts the website and podcast Your Luxe Lifestyle[2].

91. Dr. Godat received no consideration from the post-nuptial agreement.

92. Dr. Godat and Ms. Garofanelli separated approximately two weeks after the post-nuptial agreement was executed in September 2023.

93. Dr. Godat testified he purchased numerous gifts for Ms. Garofanelli between February 2022 and July 2023, including a 2021 Land Rover Ranger; a platinum and diamond ring valued at $48,700; 18K gold and diamond earrings valued at $92,000; a platinum and sapphire ring valued at $88,000; other luxury items such as Cartier, Bvlgari and Tiffany jewelry, luxury handbags, shoes, and clothing valued at $250,000; and between $50,000 and $70,000 in cash for the down payment on her Paraiso Bay, Florida condo.

94. Some of these gifts were made in the two-year period prior to the Petition Date.

95. Dr. Godat checked "no" in response to SOFA 13, which asks debtors whether they gave "any gifts with a total value of more than $600 per person" in the two years prior to the filing of the bankruptcy.

***Bank Accounts***

---

[2] https://yourluxelifestyle.com/home

96. From February through June 2025, Dr. Godat was a co-signatory on the Truist Bank Account with Ms. Anastasiia Danilina.

97. Ms. Danilina is currently employed as a DJ.

98. The Truist Account was closed in June 2025.

99. Both Ms. Danilina and Dr. Godat used the Truist Bank Account for both purchases and deposits.

100. However, Dr. Godat deposited the majority of money into the Truist Bank Account.

101. Dr. Godat testified he currently banks "nowhere."

102. Dr. Godat previously had the PNC Accounts that were closed in February 2024.

103. The closure of the PNC Bank Accounts was not disclosed in response to SOFA question 20, due to Dr. Godat's "ignorance."

***Apartment***

104. Dr. Godat testified he rents a Miami Beach, Florida apartment from his friend Ms. Bethel Zinyemba.

105. Dr. Godat currently pays $2,200 a month in cash to Ms. Zinyemba, but his name is not on the lease.

***Other transactions***

106. In February 2024, Dr. Godat travelled to Dubai and Istanbul.

107. Dr. Godat testified that on this trip, he sold some jewelry and rugs for between $20,000 to $40,000, which he then paid to his first wife as spouse support.

108. Dr. Godat did not disclose the sale of these assets or the transfer of the sales proceeds to his first wife on SOFA 18 or SOFA 7.

**<u>Debtor's Previous Bankruptcy Cases</u>**

109. Dr. Godat filed a previous chapter 11 bankruptcy on March 7, 2024, initiating case 24-30681-sgj-11.

110. Dr. Godat filed his case, and remained *pro se*.

111. On July 10, 2024, the Court granted Dr. Godat's voluntary motion to dismiss this case. [case 24-30681, docket no. 45]

**<u>GG Plastic Surgery Institute, P.A.'s Bankruptcy Case</u>**

112. On January 24, 2024, GG Plastic Surgery Institute, P.A. filed a voluntary chapter 7 petition, initiating case 24-30196-swe-7.

113. Robert Yaquinto is serving as the Chapter 7 Trustee.

114. The case remains open and Mr. Yaquinto is administering assets.

**<u>Count One: 11 U.S.C. § 727(a)(4)(A) – Dr. Godat's False Oaths</u>**

115. The United States Trustee realleges and incorporates the above allegations.

116. The Court may deny debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case…made a false oath or account." 11 U.S.C. § 727(a)(4)(A). The party objecting to discharge bears the burden of proving by a preponderance of the evidence that (1) the debtor made the statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Sholdra v. Chilmark, LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001). *See also Cadle Company v. Mitchell (In re Mitchell)*, 102 Fed.Appx. 860, 2004 WL 1448041 (5th Cir. 2004).

117. False oaths under § 727(a)(4)(A) include false statements or omissions by the debtor in the debtor's schedules and statement of financial affairs. *Beaubouef v. Beaubouef (In re*

*Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992). *See also The Cadle Company v. Guenthis (In re Guenthis)*, 333 B.R. 759, 766 (Bankr. N.D. Tex. 2005).

118. Fraudulent intent may be shown by a reckless disregard for the truth. *In re Sholdra*, 249 F.3d at 383 (citing *Economy Brick Sales, Inc. v. Gonday (In re Gonday)* 27 B.R. 428 (Bankr. M.D. La. 1983) (for the proposition that the cumulative effect of falsehoods together shows a "pattern of reckless and cavalier disregard for the truth," which supports a finding of fraudulent intent). "Debtors showing of reckless indifference to the truth in filling out their schedules and statements is equivalent to showing the requisite fraudulent intent to deceive sufficient to bar a discharge under § 727(a)(4)(A)." *In re Guenthis*, 333 B.R. at 767.

119. Dr. Godat's Schedules, Amended Schedules, and SOFA contain sufficient errors and omissions as to constitute a false oath and/or account under 11 U.S.C. § 727(a)(4)(A).

120. Dr. Godat made statements under oath in connection with his Schedules, Amended Schedules, SOFA, and 341 Meeting Testimony.

121. The statements – including statements relating to assets– were false.

122. Dr. Godat knew these statements were false.

123. Dr. Godat omitted the following from his Original Schedules, Amended Schedules A/B and D, and/or SOFA:

a. His actual residence(s) in Florida;

b. The 2022 Astin Martin;

c. The debt on the 2022 Astin Martin;

d. The Truist Bank Account;

e. The PNC Bank Accounts;

f. The closure of the PNC Bank Accounts;

g. His employer's name and address on Schedule I;

h. His actual income on Schedule I;

i. His actual expenses on Schedule J, including for maintaining multiple residences, travel and gifts to friends;

j. Gifts made in excess of $600; and

k. The sale of jewelry and rugs in Istanbul and/or Dubai in February 2024.

124. Dr. Godat made these false oaths knowingly and fraudulently.

125. Dr. Godat's reckless disregard for the truth is evident in the numerous, material omissions to his Schedules and SOFA. The omissions are material – failing to disclose his interest assets, including a luxury vehicle and bank accounts, failing to disclose a creditor, and failing to disclose sales or property. This is particularly troubling, as Dr. Godat has previously filed bankruptcy for himself and for his business GG Plastic Surgery. He has taken advantage of the bankruptcy process on behalf of himself and his business since 2024. He has previously signed schedules and statements of financial affairs. He has testified under oath at 341 meetings. He knew and understood his responsibilities to be forthcoming and transparent with the Court and parties in interest in this case as a result of his lengthy experience as a debtor and a corporate representative.

126. Accordingly, Dr. Godat's discharge should be denied because he made numerous false oaths on his Original Schedules, Amended Schedules, and SOFA. 11 U.S.C. § 727(a)(4)(A).

**Count Two: 11 U.S.C. § 727(a)(3) - Dr. Godat Failed to Keep or Preserve Records**

127. The United States Trustee realleges and incorporates the above allegations.

128. Section 727(a)(3) denies discharge where the debtor "concealed, destroyed, mutilated, falsified, or failed to keep or preserve" recorded information "from which the debtor's financial condition or business transactions might be ascertained," unless the act or failure to act was justified. 11 U.S.C. § 727(a)(3).

129. The objecting party under section 727(a)(3) "need not prove fraudulent intent [with regard to a failure to keep and preserve records], but only that the debtor unreasonably failed to maintain sufficient records to adequately ascertain his financial situation." *Neary v. Hughes (In re Hughes)*, 353 B.R. 486, 501 (Bankr. N.D. Tex. 2006) (denying discharge of debtor who operated on a cash-only basis under section 727(a)(3)), *aff'd,* 386 B.R. 624 (N.D. Tex. 2008), *aff'd,* 309 Fed. Appx. 841 (5th Cir. 2009) (citations omitted).

130. The debtor has an affirmative duty under section 727(a)(3) to provide books and records that "accurately document his financial affairs." *Id*. at 499. Creditors are not required to rely on the debtor's oral recitations or recollections of transactions. *Id*. at 500. The debtor is required to keep and produce records of his financial transactions that provide enough information for creditors and the trustee to ascertain the debtor's financial condition or to track the debtor's financial dealings with "substantial completeness and accuracy for a reasonable period of time in the past." *Id.* Section 727(a)(3) is intended to allow creditors, the Court, and the trustee "to examine the debtor's financial condition *and determine what has passed through a debtor's hands*." *Id.* at 501 (emphasis added).

131. If a debtor fails to maintain and preserve adequate records, the debtor must justify that failure. *Id.* at 500. "Depending upon the sophistication of the debtor and the extent of his activities, different record keeping practices are necessary." *Id.*

> It has been said many times that receiving a discharge in bankruptcy is a privilege, not a right. In order to have entitlement to that privilege, certain basic financial record keeping by the debtor is of paramount importance. Record keeping is required for parties in interest to be able to verify the accuracy of the sworn Schedules and SOFAs and to be certain that the disclosures are materially accurate. If there are insufficient records, then there is no way to have a check on the integrity of the Schedules and SOFAs. The integrity of the bankruptcy process depends upon having some reasonable and reliable paper trail. The regrettable consequence of failure to have adequate records must be the denial of a discharge.

*Id.* at 502.

132. Dr. Godat is a well-educated, sophisticated businessman and plastic surgeon, who built several multimillion-dollar businesses throughout his career. Yet he has operated mostly on a cash basis both before and after the Petition Date.

133. Dr. Godat has failed to maintain any ledgers or other documents, including pay stubs or tax returns, that would reflect his income and expenses. While Dr. Godat has produced sporadic pre- and post-petition bank statements, he is missing a significant number of statements. Nor has he filed any federal income tax returns for the past several years.

134. Post-petition, Dr. Godat used the Truist Bank Account only for a limited time.

135. There was no reasonable justification for Dr. Godat to operate on a cash-only basis without maintaining any corresponding records. Instead, it appears that Dr. Godat deliberately does not maintain any recorded information to prevent interested parties – including taxing authorities - from auditing his financial records.

136. Accordingly, Dr. Godat’s discharge should be denied under 11 U.S.C. § 727(a)(3).

**<u>Count Three: 11 U.S.C. § 727(a)(2) – Dr. Godat has Concealed Assets</u>**

137. The United States Trustee realleges and incorporates the above allegations.

138. Section 727(a)(2) provides that the Court may deny a discharge if the debtor has:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.

11 U. S.C. § 727(a)(2).

139. Evidence of actual intent to hinder, delay, or defraud creditors may be inferred by looking at the following factors:

a. The lack or inadequacy of consideration;

b. The relationship between the parties;

c. The retention of possession, benefit, or use of the property in question;

d. The financial condition of the transferor both before and after the transaction; and

e. The existence or cumulative effect of a series of transactions or conduct after incurring debt, onset of financial difficulties, or pending or threatened litigation by creditors; and

f. The general chronology of events and transactions in question.

*Robertson v. Dennis (In re Dennis),* 330 F.3d 696, 702 (5th Cir. 2003).

140. Dr. Godat failed to appear and testify at six of the eight 341 meetings held in this case.

141. Prior to, and during this case, Dr. Godat operated primarily on a cash basis, despite some bank account deposits that indicate he was earning substantially more than his Schedule I income of $15,000 a month.

142. Dr. Godat fails to maintain any records of his income.

143. Dr. Godat has failed to report any income to the IRS since 2022.

144. Dr. Godat's intent to hinder, delay, or defraud creditors or officers of the estate may be inferred by the facts of this case. Dr. Godat is actively concealing his true income from creditors and parties in interest by 1) failing to appear and testify at 341 meetings; 2) operating on a cash basis; and 3) failing to report income to the IRS. His Schedule I income does not comport with the few actual bank account deposits made by Dr. Godat. The Miami Life website also indicates that Dr. Godat is an integral part of the practice, and not simply a contractor brought in on an ad hoc basis. Dr. Godat also alleges he does not have any pay stubs for any period of time. Meanwhile, his actual income remains secret despite his affirmative obligation to be transparent with parties in interest. Accordingly, Dr. Godat's discharge should be denied for concealment of assets under § 727(a)(2)(A) and (B).

## Conclusion

The United States Trustee respectfully asks the Court to deny Dr. Godat's discharge under 11 U.S.C. §§§ 727(a)(4)(A), 727(a)(2) and 727(a)(3). The United States Trustee respectfully requests any other such relief as is just.

DATED: March 19, 2026

Respectfully submitted,

LISA L. LAMBERT
UNITED STATES TRUSTEE

/s/ Elizabeth Ziegler Young
Elizabeth Ziegler Young
TX Bar: 24086345 (Also NY)
Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242
(214) 767-8967 x 1247
elizabeth.a.young@usdoj.gov